Summers, J.
Prior to the year 1906 elections for state and county officers were held in the fall of every year, and for municipal and township *483 officers in the spring of every year. At the November election in 1905 the following amendment to.the constitution was adopted:
“Sec. 1. [Times of holding.] Elections for state and county officers shall be held on the first Tuesday after the first Mpnday in November in the even numbered years; and all elections for all other elective officers shall be held on the first-Tuesday after the first Monday in November in the odd numbered years.
“Sec. 2. [Terms of officers, vacancies, etc.] The term of office of the governor, lieutenant governor, attorney general, secretary of state and treasurer of state shall be two years, and that of the auditor of state shall be four years. The term of office of judges of the supreme court and circuit courts shall be such even number of years not less than six (6) years as may be. prescribed by the general assembly; that of the judges of the common pleas court six (6) years and of the judges of the probate court four (4) years and that of other judges shall be such even number of years not exceeding six (6) years as may be prescribed by the general assembly. The term of office of justices of the peace shall be such even number of years not exceeding four (4) years, as may be prescribed by the general assembly. The term of office of the board of public works shall be such even number of years not exceeding six (6) years as may be so prescribed; and the term of office of all elective county, township, municipal and school officers shall be such even number of years not exceeding four (4) years as may be so prescribed.
“And the general assembly shall have power to* *484 so extend existing terms of office as to affect (sic) the purpose of Section 1 of this article.
“Any vacancy which may occur in any elective state office other than that of a member of the general assembly or of governor, shall be filled by appointment by the governor until the disability is removed, or a successor elected and qualified. Every such vacancy shall be filled by election at the first general election for the office which is vacant, that occurs more than thirty (30) days after the vacancy shall have occurred. The person elected shall fill the office for the unexpired term. All vacancies in other elective offices shall be filled for the unexpired term in such manner as may be prescribed by law.
“Sec. 3. [Present incumbents.] Every elective officer holding office when this amendment is adopted, shall continue to hold such office for the full term for which he was elected, and until his successor shall be elected and qualified as provided by law.”
To effect the purpose of the amendment the following act was passed April 2, 1906, 98 O. L., 271:
AN ACT.
“To conform the terms of office of various state and county officers to the constitutional provisions of (relating to) biennial elections.

“Be it enacted by the general assembly of the state of Ohio:

“Section 1. The existing terms of office of the following state and county officers, which would otherwise expire in any even numbered year, are *485 hereby extended to the following dates respectively of the odd numbered year next succeeding the time when they would so otherwise expire: * * * sheriff, to the first Monday in January. * * *
“And the incumbents in said several offices, at the time when said existing terms would otherwise expire, shall continue to hold and enjoy the same until the expiration of said respective terms as' so extended, subject to all the provisions of law relating to removals and vacancies therein.
“Before entering upon the discharge of his duties for such added period, any person entitled to hold any such office therefor, shall give bond to the state, in like manner and form as is required of one elected to fill such office.
“At any election for state and county officers hereafter held, successors to all. such officers whose term will expire during the odd numbered year next succeeding the holding of such election, shall be elected, for terms to commence at such time during said odd numbered year as is provided by law, and to continue for the following periods respectively: * * * sheriff, two years * * *.
“Provided further that the term of office of any such county officer, expiring in the year one thousand nine hundred and six, whose successor was elected prior to the passage of this act, shall not' be extended.”
It is conceded that this act extends Karb’s term to the first Monday in January, 1909, but it is contended that a vacancy exists by reason of his ineligibility under Section 3, Article X, of the Constitution which reads: “No person shall be eligible *486 to the office of sheriff, or. county treasurer, for more than four years, in any period of six years.”
The amendment provides that the general assembly shall have power to so extend existing terms of office as to effect the purpose of Section 1, and that every elective officer in office when the amendment is ■ adopted shall continue to hold his office for the full term for which he was elected. The purpose of Section 1, is that elections for state and county officers shall be held in the even numbered years, and elections for all other elective officers in odd numbered years, and in order to intelligently interpret the amendment and construe it and the statute, it is necessary to know the conditions to be met. So far as material to the present case they were that the terms of all elective county officers were three. years, excepting the terms of sheriffs, treasurers and coroners, which were two years. The terms of officers expired in different years, some in even numbered years and some in odd numbered years, and in different months of the year, and no general election would be held in 1907, so that it was necessary to provide either that some terms should be shortened or that some terms should be lengthened, or that for a period less than a full.term the offices should be filled by election or appointment. The general assembly evidently wished the amendment to be adopted and so it provided in the amendment that the terms of those in office should not be shortened and that the existing terms might be extended. When a new constitution is adopted, or a change is made in the form of government of municipal *487 corporations, the customary manner of meeting the interregnum is by continuing existing officers in' office until the new laws can become operative by an election. The authority given the general assembly to extend existing terms was in legal effect authority to continue the incumbents in office to the end of the extended term, and to limit the* power by Section 3, Article X, would prevent the effecting of the purpose of the amendment in the mode therein expressly authorized. These provisions of the amendment were necessary to make it operative. They are merely temporary and Section 3, Article X, has no application. Cases interpreting similar constitutional restrictions respecting ordinary legislation are not helpful, because here we are not called upon to apply a constitutional limitation to an act passed by the general assembly under its general grant of legislative power, but to apply such a limitation t*o an act specially authorized by the constitution. An act of the legislature authorized by a constitutional amendment and enacted to make the amendment operative is not necessarily subject to provisions of the constitution limiting the legislative power, but is to be interpreted as if part of the constitutional amendment. It won't do to say that there is no conflict between this provision of the amendment and Section 3, Article X, because the amendment merely authorizes an extension of terms, and Section 3 only makes the incumbents ineligible to serve. The purpose of the amendment being to authorize the continuance in office of the incumbents, both provisions cannot operate, and the *488 rule of statutory construction that where there are general provisions and a special provision relating to the same matter, the special provision, is given effect as an exception, may appropriately be applied.
But it is said that the act expressly recognizes the provisions oí Section 3, Article X, by continuing incumbents in office until the end of the extended term “subject to all the provisions of law relating to removals and vacancies therein.” To so interpret the act would be to convict the general assembly of mis-interpreting the amendment or of providing for the emergency in a manner not authorized. These provisions of the act were intended to provide for removals and vacancies in the extended terms, and if a vacancy, such as that contended for, had been contemplated it is not likely that it would have been so provided for.
It is also contended that the act if so interpreted cannot have uniform operation throughout the state. The act operates uniformly wherever the conditions exist to which it can apply, and if it were otherwise the same considerations would apply here as to Section 3, Article X.
It is well settled that quo warranto and not mandamus is the proper proceeding to try a title to the office. Karb is not a party to this proceeding, and if the title to the office were involved and not merely the question of the right to a certificate as a predicate to an action to determine the title, the writ would be refused on the ground that mandamus does not lie; but, by construction of the *489 statute and the constitutional amendment, having reached the conclusion that the relator is not entitled to a commission, the demurrer to the answer is overruled and the writ, for that reason, is refused.

Writ refused.

Shaucic, C. J., Price, Crew, Spear and Davis, JJ-, concur.